**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Kaufman, | No. CV-16-02248-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Warner Bros. Entertainment Incorporated, et al., | |
| Defendants. | |

Pending before the Court is Warner Bros. Consumer Products Inc. and Warner Bros. Entertainment Inc.'s ("Defendants") motion for summary judgment or, alternatively, judgment on the pleadings. (Doc. 66). David Kaufman ("Plaintiff") has responded, (Doc. 72), and Defendants have replied, (Doc. 77). Additionally, upon this Court's order, (Doc. 78), Plaintiff has filed a surreply to Defendants' evidentiary objections, (Doc. 81), and Defendants have filed a sur-surreply, (Doc. 83).

**I.  Background**

In the mid-1960s, Kustomotive—a partnership between Richard Korkes ("Korkes") and Daniel Dempski ("Dempski") that created automobiles for use in movies, television, and other forms of entertainment—entered into contracts with Twentieth Century-Fox Television, Inc. ("Fox") and Greenway Productions, Inc. ("Greenway") to build a "Batcycle" and a "Batgirl-Cycle" to be used in the 1960s *Batman* television show and movie and the *Batgirl* movie. (Docs. 67-6 & 67-16). The Batcycle was to be made by fusing together a modified Yamaha motorcycle, upon which the superhero Batman

would ride, with a detachable go-kart sidecar for his sidekick Robin, while the Batgirl-Cycle was to be made of a modified "motorcycle chassis." (Docs. 67-6 & 67-16).

The Batcycle agreement stated that Kustomotive:

> quitclaims, assigns, transfers and sets over to [Fox and Greenway] any and all right, title and interest in and to the design of the Batcycle . . . and in and to the design or designs of the completed Batcycle . . . and any and all right, title and interest in and to said designs shall forever be vested in and owned solely by [Fox and Greenway].

(Doc. 67-6 at 7). The Batgirl-Cycle agreement contained the same language. (Doc. 67-16 at 4).

The agreements did provide, however, the opportunity for Kustomotive to "acquire a percentage of net profits received from merchandising rights in and to the Batcycle" and Batgirl-Cycle "[s]ubject to entering into an agreement with Licensing Corporation of America" ("LCA"). (Doc. 67-6 at 5); (Doc. 67-16 at 4–5). Plaintiff claims that Kustomotive entered into such a merchandising contract with LCA regarding the Batcycle ("Merchandising Contract"), (Doc. 72 at 2), and the Batgirl-Cycle, (Doc 28 at 4), while Defendants contest that such merchandising agreements were ever made, (Doc. 66 at 2).[1]

Korkes and Dempski are deceased. (*Id.*) Plaintiff claims to be the assignee of Korkes' rights under the Batcycle and Batgirl-Cycle contracts and the related merchandising agreements. (*Id.*) Plaintiff sued Defendants, who are allegedly successors in interest to LCA, arguing that Defendants owe Plaintiff a percentage of the merchandising profits from selling Batcycle and Batgirl-Cycle products. (*Id.*) Plaintiff alleges five causes of action: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) conversion; (4) unjust enrichment; and (5) fraudulent concealment. (Doc. 28).

## II. Legal Standards

The Court must grant a motion for summary judgment where there is "no genuine

---

[1] The Court follows the parties' practice of capitalizing the Batcycle Merchandising Contract, but not capitalizing the Batgirl-Cycle merchandising contract.

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The summary judgment procedure proceeds in two steps. First, the movant must cite materials in the record demonstrating an absence of a genuine dispute of material fact or "point[] out . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25 (1986). Second, if the movant satisfies its burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A dispute is material if it involves "facts that might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Where a nonmoving party's evidence is "merely colorable" or "not significantly probative" summary judgment should be granted. *Id.* at 249–50. In ruling on a motion for summary judgment, the Court must make "all justifiable inferences" from the evidence in the nonmoving party's favor. *Id.* at 255.

The Court must grant a motion for judgment on the pleadings where "taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *McGann v. Ernst & Young*, 102 F.3d 390, 392 (9th Cir. 1996); *see* Fed. R. Civ. P. 12(c).

When a court sits in diversity jurisdiction, as the Court does here, it must utilize federal procedural law and state substantive law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Under this framework, conflict-of-law disputes are considered substantive, and should be resolved by applying the law of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In determining the content of state law, the state's highest court is "the final arbiter of state law," while "[a] state appellate court's announcement of a rule of law is a datum for ascertaining state law." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1266 (9th Cir. 2017) (first quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940); and then quoting *Miller v. Cty. of Santa Cruz*, 39 F.3d 1030, 1036 n.5 (9th Cir. 1994), *as amended* (Dec. 27, 1994)).

**III. Analysis**

**A. Evidentiary Issues**

At the outset, the Court must resolve what evidence it may consider in ruling on Defendants' motion for summary judgment. Defendants contend that many of the exhibits attached to Plaintiff's response may not be considered by the Court because they are not authenticated, lack foundation, contain inadmissible hearsay, and are not part of the record. (Doc. 77 at 4–7). Additionally, Defendants claim that the Court should deem certain paragraphs in Defendants' statement of facts as true because Plaintiff failed to ground his opposition to these statements in the record. (*Id.* at 7–8). For his part, Plaintiff contends that Defendants have admitted the existence of the Merchandising Contract by failing to respond in a timely manner to Plaintiff's request for admission. (Doc. 72 at 16–17). These claims will be resolved in turn.

**1. Authentication**

Defendants argue that Exhibits B, D, F, G, H, I, K, N, P, R, U, and V lack authentication, because Plaintiff merely attached them to his response without an authenticating affidavit. (Doc. 77 at 6). The Court need not resolve what appears to be an intra-circuit split on whether an authenticating affidavit is necessary on summary judgment when a document is authenticated through personal knowledge. *Compare Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (necessary), *with Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003) (not necessary). These exhibits are authenticated on the basis of their status as ancient documents, because they are "in a condition that creates no suspicion about [their] authenticity[,] . . . [were] in a place where, if authentic, [they] would likely be[,] and . . . [are] at least 20 years old." Fed. R. Evid. 901(b)(8). Accordingly, they can be considered by the Court on summary judgment.

**2. Record**

Defendants claim that Exhibits C, E, J, Q-1, and W were not filed with Plaintiff's statement of facts, and thus are not a part of the record. (Doc. 77 at 4). On November

14, 2017, Plaintiff filed his statement of facts in opposition to summary judgment and attached exhibits thereto. (Doc. 73). On the same day, Plaintiff filed a notice of errata, indicating that Exhibits B and D failed to upload to the system, possibly due to the size of the files, and Exhibits K and Q-1 "failed to upload as the ECF system repeatedly returned 'duplicate file' messages for those documents." (Doc. 74). Of these exhibits, Exhibit Q-1 was not subsequently uploaded to the CM/ECF system. Additionally, Exhibits C, E, J,[2] and W were not uploaded in the system and were not mentioned in the notice of errata.

Upon this Court's order to file a surreply to Defendants' evidentiary objections, Plaintiff filed seventeen exhibits, composed of the exhibits that were referenced in Plaintiff's previous filings, but which were not originally uploaded to the CM/ECF system and additional exhibits Plaintiff purports to rely on in his surreply. (Docs. 81-1–81-17).

On a motion for summary judgment, the Court may only take into account evidence that is part of the record. *See* Fed. R. Civ. P. 56(c)(3); *Fraser*, 342 F.3d at 1036. Although Federal Rule of Civil Procedure 56 does not define the term "record," the Court understands it to mean "[t]he official report of the proceedings in a case, including the filed papers." *Record*, *Black's Law Dictionary* (10th ed. 2014). As a general matter, exhibits must be filed electronically, absent leave of court. *See Electronic Case Filing Administrative Policies and Procedures Manual* 2, 17–19 (2018); LRCiv 5.5; Fed. R. Civ. P. 5(d)(3). In response to a motion for summary judgment, such filings must be made within thirty days of the motion for summary judgment being served. LRCiv 56.1(d). If this deadline is not met, the Court may permit tardy filings for "good cause" upon a party's motion describing its "excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Plaintiff did not file any of the exhibits contained in his surreply within thirty days of Defendants' motion for summary judgment. Furthermore, Plaintiff did not subsequently move for relief or represent that his neglect was excusable. Finally, the Court's order requiring a surreply did not permit the filing of untimely exhibits. Accordingly, Exhibits

---

[2] Although an attachment to Plaintiff's statement of facts on CM/ECF is labeled "Exhibit J," it appears that the attachment is meant to be labeled Exhibit K.

- 5 -

C, E, J, Q-1, W, and all exhibits attached to Docket 81 are not a part of the record and will not be considered by the Court in resolving Defendants' motion for summary judgment.

In the same vein, the Court will not expand the summary judgment record to include evidence, describing Plaintiff's disclosure, filed in Defendants' sur-surreply. (Doc. 83-2).

### 3. Statement of Facts

Defendants argue that Plaintiff does not dispute various paragraphs of Defendants' statement of facts. (Doc. 77 at 7–8). Local Rule 56.1(b) obligates a party opposing summary judgment to file a responsive statement of facts, which must "reference to the specific admissible portion of the record supporting the party's position if [a] fact is disputed." LRCiv 56.1(b). Non-compliance with this rule permits a court to deem the movant's statement of facts as true. *Szaley v. Pima Cty.*, 371 Fed. Appx. 734, 735 (9th Cir. 2010); Fed. R. Civ. P. 56(e)(2); *see also Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. La. Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988) (holding that a similar local rule "serve[d] as adequate notice to nonmoving parties that if a genuine issue exists for trial, they must identify that issue and support it with evidentiary materials, without the assistance of the district court judge.").

Plaintiff, without reservation did not dispute, and is deemed to admit, the following paragraphs in Defendants' statement of facts: 1 to 4, 6 to 10, 14, 15, 17, 20, 22, 27, 30, 32 to 34, 36, 37, 39, 41 to 43, 45 to 48, 51, and 52. (Doc. 73 at 1–6). Plaintiff, with reservation, did not dispute, and is deemed to admit with reservation, paragraphs 21, 23, 24, 38, and 40. (*Id.* at 3–5). Plaintiff failed to respond to paragraph 31, (*id.* at 4), and is deemed to admit the truthfulness of that paragraph.

Plaintiff claims, and the Court agrees, that paragraphs 5, 11 to 13, 16, 18, 19, 29, and 35 "set[] forth argument[s] and conclusions rather than . . . statement[s] of fact" and are "unsupported by any reference to the record, documentary evidence, . . .affidavit[s], declaration[s], or testimony." (*Id.* at 2–4). Accordingly, Plaintiff is not deemed to admit

the truthfulness of these statements.

### 4. Best Evidence Rule and Hearsay

Defendants level specific best evidence and hearsay challenges against Exhibits L, M, and Q and general hearsay challenges against Exhibits B, D, F, G, H, I, K, N, P, R, U, and V. (Doc. 77 at 4–6). With some exceptions, hearsay is an out-of-court statement offered for the truth of the matter asserted, Fed. R. Evid. 801(c), and is generally inadmissible, Fed. R. Evid. 802.

Generally, under the best evidence rule, "[a]n original writing . . . is required in order to prove its content unless [the Federal Rules of Evidence] or a federal statute provides otherwise." Fed. R. Evid. 1002. Federal Rule of Evidence 1004 provides, however, that other evidence may be used to prove the contents of a writing where "all the originals are lost or destroyed, and not by the proponent acting in bad faith." Fed. R. Evid. 1004(a). "Unless someone testifies that he or she personally destroyed or witnessed the destruction of a document, such proof will ordinarily be circumstantial." *United States v. McGaughey*, 977 F.2d 1067, 1071 (7th Cir. 1992).

"[A] reasonable and diligent search is typically the only way to establish that a document has been lost or is unavailable." *Medina v. Multaler, Inc.*, No. CV 06-00107 MMM (AJWx), 2007 WL 5124009, at *2 (C.D. Cal. Feb. 7, 2007); 31 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 8014(1) (2000). The required intensity of a search necessary to constitute sufficient circumstantial evidence is at its highest where a document is central to a case. *Medina*, 2007 WL 5124009, at *3. The determination of whether a search is sufficient is within the trial court's discretion. *Id.*; *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1321 (9th Cir. 1986); *see* Fed. R. Evid. 104(a), 1008. The proponent of the evidence must show that it is more likely than not that an original was lost or destroyed. *See Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987); Fed. R. Evid. 104(a), 1004, 1008.

The Court may consider evidence that violates the rule against hearsay, *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016), or the

best evidence rule, *Hughes v. United States*, 953 F.2d 531, 543 (9th Cir. 1992), where the evidence could be presented in an admissible form at trial.

### i. Exhibit L: Affidavit of Michael Gale Black

Initially, Defendants argue that Michael Gale Black's ("Black") statement that "Richard Korkes showed me his contracts with Licensing Corporation of America (LCA) for merchandising for the Batcycle and Batgirl-Cycle" is inadmissible hearsay. (Doc. 77 at 4–5). Defendants contend that the truth of this statement is dependent upon "Korkes' statement or assertion that the documents were contracts with LCA." (*Id.* at 4 (emphasis removed)). Without admissible evidence that the contracts Black observed were in fact those between LCA and Kustomotive, Defendants conclude, "Blacks testimony about the contents of the documents lacks foundation and is inadmissible." (*Id.* at 5).

Plaintiff responds by relying on a supplemental affidavit attached to Plaintiff's surreply that purports to "make[] it clear that [Black's] testimony is based on his own review of the documents." (Doc. 81 at 6). As noted above, however, the Court will not consider this supplemental affidavit because it is outside the record.

In any event, Plaintiff does not adequately explain why Black's testimony, even if based on his own review of the underlying documents, should be permitted in the face of the best evidence rule. Plaintiff notes that Rule 1004(a) provides for an exception to the best evidence rule where the original document is lost or destroyed not in bad faith, even where such loss or destruction occurs due to negligence. (Doc. 81 at 6). Plaintiff then concludes that "Black's testimony of the contents of the contracts is admissible as proof of the contracts." (*Id.*) Plaintiff, however, fails to establish that the contracts are lost. As an initial problem, Black, who is the custodian of Korkes' records and who states that he personally reviewed the Merchandising Contract and the Batgirl-Cycle merchandising contract, is entirely silent as to what became of those documents. (Doc. 73-10). He fails to explain whether he still maintains those documents in his possession or whether he lost them. (*Id.*) Relatedly, Plaintiff fails to proffer evidence establishing that he engaged in a search sufficient to provide circumstantial evidence that allows the Court to draw the

- 8 -

inference that the Merchandising Contract and the Batgirl-Cycle merchandising contract—which are central to Plaintiff's claims—are lost. Plaintiff provides no evidence that he subpoenaed Black's records to search for the documents. In fact, Plaintiff does not even establish that he asked Black whether he possessed the contracts.[3] The only evidence in the record that Plaintiff performed any search for the contracts is his questioning of Defendants' agents as to whether they possessed the documents.

Plaintiff's statement in his surreply that "neither party has been able to locate an original or copy of the licensing agreement," (Doc. 81 at 6), is an argument, and does not constitute admissible evidence establishing that the merchandising agreements are lost such that the exception to the best evidence rule is triggered. Furthermore, Plaintiff's response to Defendants' request for production of the Merchandising Contract, which stated that Plaintiff "is unable to comply with [the request] because, after a diligent search and a reasonable inquiry have been made in an effort to comply with this demand, the document has not been located," is conclusory and fails to describe what efforts Plaintiff took to search for the Merchandising Contract. (Doc. 67-3). Given the centrality of the Merchandising Contract and the Batgirl-Cycle merchandising contract to this case, the intensity and diligence of Plaintiff's search are insufficient to allow the Court to draw the inference that these contracts have been lost.

Accordingly, the best evidence rule bars Black's statements involving his personal review of the Merchandising Contract and the Batgirl-Cycle merchandising contract. Additionally, the best evidence rule bars consideration of Black's statements that Korkes told Black the terms and conditions of the contracts, because those statements concern the contents of the contracts as well.

Defendants further contend that all of Black's testimony about what Korkes told

---

[3] The Court notes that even if it considers Black's supplemental affidavit—which was produced after Plaintiff studied Defendants' reply—Black entirely fails to explain what became of the documents that were at one point in his possession. Given that Plaintiff had two opportunities to submit evidence that the Merchandising Contract and the Batgirl-Cycle merchandising contract are lost—both in his response and his surreply—the Court can only conclude that Plaintiff lacks evidence that the documents are lost.

- 9 -

him is hearsay. (Doc. 77 at 5). Plaintiff merely responds that because Black's testimony about the contents of the Merchandising Contract and the Batgirl-Cycle merchandising contract is "based on his own perception of the contracts themselves, his testimony is not hearsay." (Doc. 81 at 7). Plaintiff's argument implicitly concedes that any of Black's testimony that was not based on his personal knowledge, but based upon what Korkes told him, is hearsay.

Accordingly, the Court finds that Black's discussed testimony is barred by the rule against hearsay and the best evidence rule, and additionally finds that such violations cannot be remedied at trial. Accordingly, the Court will not consider this evidence on summary judgment.[4]

### ii. Exhibit M: Affidavit of Frank L. Tolley

Defendants argue that Frank L. Tolley's ("Tolley") testimony is inadmissible hearsay, because his testimony is based upon statements Korkes made to Tolley, and that any statements Korkes made to Tolley regarding the contents of the Merchandising Contract and the Batgirl-Cycle merchandising contract are barred by the best evidence rule. (Doc. 77 at 5–6). Plaintiff fails to respond to these arguments and the Court finds that the testimony in Tolley's affidavit is barred as inadmissible hearsay and as violative of the best evidence rule. Accordingly, the Court will not consider this evidence on summary judgment.

### iii. Exhibit Q: Declaration of David Kaufman

Defendants argue that all of the statements in Plaintiff's declaration regarding what Korkes told him and what Korkes felt is inadmissible hearsay. (Doc. 77 at 6). Additionally, Defendants contend that Plaintiff's recollection of what Korkes told to Plaintiff about what the studio told to Korkes is double hearsay. (*Id.*) Plaintiff fails to respond to these hearsay objections. Accordingly, all of the portions of Plaintiff's declaration about what Korkes told to him are excluded as inadmissible hearsay.

---

[4] Defendants' additional argument, that Black's personal knowledge of the contents of the Merchandising Contract was inappropriately disclosed, (Doc. 83 at 10–13), is unavailing, because Plaintiff's disclosure statement is outside of the record, *see supra* Part III.A.2.

#### iv. Generalized Hearsay Objections

Defendants challenge the admission of Exhibits B, D, F, G, H, I, K, N, P, R, U, and V as inadmissible hearsay. (Doc. 77 at 6–7). Plaintiff contends that these exhibits constitute ancient documents that are admissible hearsay. (Doc. 81 at 7–8).

"A statement in a document that was prepared before January 1, 1998, and whose authenticity is established" constitutes admissible hearsay. Fed. R. Evid. 803(16). These documents are all ancient documents whose authenticity has been established, *see supra* Part III.A.1; therefore, the statements contained in them constitute admissible hearsay and will be considered by the Court on summary judgment.

### 5. Request for Admission

Plaintiff contends that Defendants were untimely in responding to a request for admission as to the existence of the Merchandising Contract, and therefore, should be deemed to admit this fact. (Doc. 72 at 16–17). The request for admission, however, was contained in Exhibit W, which is not a part of the record before the Court on summary judgment; therefore, Defendants are not deemed to admit the existence of the Merchandising Contract.

## B. Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing

"To bring an action for the breach of contract, the plaintiff has the burden of proving the existence of the contract . . . ." *Thomas v. Montelucia Villas, LLC*, 302 P.3d 617, 621 (Ariz. 2013); *see Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011).[5] "For an enforceable contract to exist, there must be an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained." *Rogus v. Lords*, 166 Ariz. 600, 602 (Ariz. Ct. App. 1991). Proof of "the existence of a contractual obligation" is a necessary element to bring a claim for breach of the covenant of good faith and fair dealing. *Cavan v. Maron*, 182 F. Supp. 3d 954, 961

---

[5] The Court will not address the parties' dispute over whether Arizona or California law applies to Plaintiff's contractual claims, because the laws are materially similar.

(D. Ariz. 2016) (citing *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986)); *see also Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 826 P.2d 726 (Cal. 1992).

Defendants argue that Plaintiff has failed to prove the existence of the Merchandising Contract and the Batgirl-Cycle merchandising contract—which is a necessary element for Plaintiff's breach of contract and breach of the covenant of good faith and fair dealings claims—because Defendants requested such documents from Plaintiff during discovery, and Plaintiff was unable to produce the documents. (Doc. 66 at 5–6).

Plaintiff does not dispute that proving the existence of the Merchandising Contract and the Batgirl-Cycle merchandising contract is a necessary element of his claims, but responds by arguing that three forms of evidence raise a genuine issue of material fact regarding the existence of the Merchandising Contract: (1) Black "was aware of the contract, viewed it, and was aware of its payment terms"; (2) "Korkes was aware of the agreement and communicated its existence and terms to multiple persons, including Plaintiff"; and (3) "several contemporary documents refer to the existence of the contract and even demonstrate partial performance of its accounting terms." (Doc. 72 at 6–7).

As discussed above, the first two categories of information cannot be considered by this Court on summary judgment. *See supra* Part III.A. Plaintiff cites two "contemporary documents" that he claims "refer to the existence of the contract and even demonstrate partial performance of its accounting terms." (Doc. 72 at 7 (citing Doc. 73 ¶ 68)). The first document, Exhibit J, cannot be considered by the Court because it is not a part of the summary judgment record. *See supra* Part III.A.2. The second document, Exhibit V, is titled "Financial Statement on 'Batcycles'" and describes amounts owed and due from persons related to the Batcycle. (Doc. 72-20). Exhibit V, while purportedly describing the financial status of the Batcycle, says nothing regarding merchandising rights or LCA. (*Id.*) At oral argument, Plaintiff contended for the first time that this financial statement related to showcasing revenue that Kustomotive contractually owed to LCA. Plaintiff entirely fails to explain how the record evidence supports this proposition.

Even accepting Plaintiff's characterization of the evidence as true, however, Plaintiff does not explain why proof of an exhibition contract creates a genuine issue of material fact as to the existence of the Merchandising Contract.

Furthermore, Plaintiff seems to abandon any argument that Defendants breached the alleged Batgirl-Cycle merchandising contract, (Docs. 72, 73, 83), and presents no admissible evidence that this contract exists. Accordingly, the Court finds that no genuine dispute of material fact exists regarding the existence of the Merchandising Contract or the Batgirl-Cycle merchandising contract, and grants summary judgment to Defendants on Plaintiff's breach of contract and breach of the covenant of good faith and fair dealing claims.[6]

### C. Unjust Enrichment

Plaintiff's unjust enrichment claim proceeds by stating that "Defendants were enriched by funds and property belonging to Plaintiff, including, *inter* 1 [sic] *alia*, proceeds derived from licensing and merchandising contracts." (Doc. 28 at 9). Additionally, Plaintiff claimed that "[a]s a result of Defendants' actions, Plaintiff was impoverished to his detriment and damaged in an amount to be determined at trial." (*Id.*)

Unjust enrichment exists "when one party has and retains money or benefits that in justice and equity belong to another." *Trustmark Ins. Co. v. Bank One, Ariz., NA*, 48 P.3d 485, 491 (Ariz. Ct. App. 2002). The elements of unjust enrichment are: "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment and the impoverishment; and (5) the absence of a legal remedy." *Id.*

Plaintiff's argument is based off of the idea that "[i]f the [Merchandising Contract] does not exist or is unenforceable, Plaintiff has demonstrated that Defendants received

---

[6] Because the Court finds that Defendants initially prevail regarding the existence of the Merchandising Contract and the Batgirl-Cycle merchandising contract, it need not reach Defendants' additional argument that Plaintiff cannot prove the essential terms of those agreements. (Doc. 66 at 6). The Court notes, however, that Plaintiff's only evidence regarding the terms of those agreements are not before the Court on summary judgment, as his submitted evidence constitutes inadmissible hearsay and is violative of the best evidence rule. *Compare* (Doc. 72 at 7–8), *with supra* Part III.A.4.

the benefit of Korkes' design without paying him a commensurate royalty." (Doc. 72 at 12). Plaintiff does not explain how Korkes was not appropriately compensated for the benefits Defendants allegedly received. Additionally, the only fact that Plaintiff designates as material is the existence of the Merchandising Contract, (*Id.*); accordingly, because the Court has already determined that there is no genuine dispute of material fact as to the existence of the Merchandising Contract, *see supra* Part III.B, summary judgment is owed to Defendants on Plaintiff's unjust enrichment claim.

### D. Conversion

Plaintiff claims that if "the Batcycle Contract and Batgirl-Cycle Contract are deemed unenforceable for any reason, by virtue of agreements entered into with Richard Korkes, [Plaintiff] holds the intellectual property rights associated with the Batcycle and Batgirl-Cycle, including the common law copyright and trademarks." (Doc. 28 at 9).

Defendants contend that Arizona law, which does not recognize conversion for intangibles that have not been "merged in, or identified with, some document," applies to defeat Plaintiff's conversion claim. *Miller v. Hehlen*, 104 P.3d 193, 203 (Ariz. Ct. App. 2005) (citation omitted). Plaintiff contends that California law applies, and therefore his conversion claim can proceed, because California permits conversion claims for unmerged intangibles. *Kremen v. Cohen*, 337 F.3d 1024, 1033 (9th Cir. 2003); A *& M Records, Inc. v. Heilman*, 142 Cal. Rptr. 390, 400 (Cal. Ct. App. 1977); *see also Payne v. Elliot*, 54 Cal. 339, 341–42 (1880) (rejecting the merger doctrine in the context of conversion of stock). The Court need not resolve what appears to be a complex and murky conflict-of-law question,[7] because even assuming that California law applies,

---

[7] Arizona follows the Restatement (Second) of Conflict of Laws ("Restatement") in resolving choice-of-law disputes in tort cases. *Bates v. Superior Court of State of Ariz., In and For Maricopa Cty.*, 749 P.2d 1367, 1369 (Ariz. 1988). Under the Restatement's framework, "courts are to resolve tort issues under the law of the state having the most significant relationship to both the occurrence and the parties with respect to any particular question. *Id.* at 1370 (citing Restatement (Second) of Conflict of Laws § 145 (Am. Law Inst. 1971)). In determining which state has the most significant relationship, "especially relevant contacts include": "1. The place where the injury occurred; 2. The place where the conduct causing the injury occurred; 3. The domicile, residence, nationality, place of incorporation and place of business of the parties; [and] 4. The place where the relationship, if any, between the parties is centered." *Id.* Resolving these choice-of-law factors is particularly difficult in this case, as it

Plaintiff's conversion claim fails.

In California, a conversion claim has three elements: "ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992). Defendants argue that Plaintiff has no ownership or right to the Batcycle and Batgirl-Cycle intellectual property, because Korkes assigned all such rights to Fox and Greenway under the Batcycle and Batgirl-Cycle contracts. (Doc. 66 at 7). Plaintiff responds that the assignment is not enforceable, because Korkes and Dempski made the Batcycle and Batgirl-Cycle contracts in exchange for three forms of consideration: "(1) lease payments, (2) the right to create and exhibit duplicates, and (3) merchandising rights." (Doc. 72 at 10). According to Plaintiff, if Korkes and Dempski did not receive merchandising rights, the assignment of rights to Fox and Greenway is subject to rescission. (*Id.*)

An initial fatal defect in Plaintiff's argument is that he entirely fails to cite any law to support his argument that rescission of the Batcycle and Batgirl-Cycle contracts is appropriate under the circumstances. (*Id.*) Furthermore, the only forms of admissible evidence Plaintiff refers to in support of his argument are two letters from Charles FitzSimons of Greenway indicating that LCA should enter into a written contract with Korkes and Dempski giving them a percentage of merchandising profits. (*Id.* (citing Docs. 73-6 & 73-7)). Plaintiff argues that these letters establish a genuine issue of material fact as to the issue of rescission, because FitzSimons' desire to "get a deal spelled out" established "Fox and Greenway['s understanding] that [the] merchandising rights granted to Korkes/Dempski were an essential element of the assignment of rights under the Batcycle agreement." (*Id.*) Given this evidence, however, it is not clear precisely what contractual theory Plaintiff is proceeding on to state that rescission is appropriate. Given this lack of clarity, which is borne by Plaintiff's own dearth of legal

---

allegedly involves the nationwide conversion of intangible intellectual property, obfuscating where the injury occurred and the place where the conduct causing the injury occurred.

analysis, the Court finds that there is no basis to hold that the Batcycle and Batgirl-Cycle contracts are subject to rescission.

Additionally, even assuming that Korkes had rights to assign, there is no evidence indicating that Korkes assigned such rights to Plaintiff. Such an allegation is entirely absent from Plaintiff's statement of facts, (Doc. 73), and Plaintiff's affidavit, (Doc. 73-15), and the agreements assigning Korkes' rights to Plaintiff that are referred to in the complaint, (Doc. 28 at 6), are not a part of the record.

Thus, there is no genuine issue of material fact as to conversion, because Korkes had no rights of ownership to the Batcycle and Batgirl-Cycle designs to assign to Plaintiff, and additionally, even if Korkes did have such rights, there is no evidence that he assigned such rights to Plaintiff. Accordingly, the Court grants summary judgment to Defendants on Plaintiff's conversion claim.

### E. Fraudulent Concealment

Plaintiff concedes that summary judgment is appropriate on his fraudulent concealment claim. (Doc. 72 at 11). Accordingly, the Court grants summary judgment to Defendants on Plaintiff's fraudulent concealment claim.

### IV. Conclusion[8]

Pursuant to the foregoing,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment, and, Alternatively, Motion for Judgment on the Pleadings, (Doc. 66), is **GRANTED**. The Clerk of the Court shall enter judgment in favor of Defendants and dismiss the case with prejudice.

Dated this 12th day of September, 2018.

James A. Teilborg
Senior United States District Judge

---

[8] The Court notes that because it grants summary judgment on all of Plaintiff's claims, it will not reach Defendants additional arguments that Plaintiff's claims are barred by the statute of limitations and by laches.