**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Kaufman, | No. CV-16-02248-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Warner Bros. Entertainment Incorporated and Warner Bros. Consumer Products Incorporated, | |
| Defendants. | |

Pending before the court is Defendant Warner Bros. Entertainment Inc. and Defendant Warner Bros. Consumer Products Inc.'s (collectively, "Defendants") Motion for Attorneys' Fees (Doc. 92) and Plaintiff David Kaufman's ("Plaintiff") Motion for Leave to File Surreply to Defendants' Motion for Attorneys' Fees (Doc. 116). These motions are fully briefed.[1] Finding these matters appropriate for decision without oral argument,[2] the Court now rules on these motions.

---

[1] (*See* Docs. 92, 106, 111, 116, 118, 119).

[2] Plaintiff requested oral argument in his Amended Response to Defendants' Motion for Attorneys' Fees (Doc. 108-1 at 1). However, because both parties submitted memoranda discussing the law and facts in support of their positions and oral argument would not have materially assisted the Court in reaching an informed decision, the Court did not hold oral argument on Defendants' Motion for Attorneys' Fees nor on Plaintiff's Motion for Leave to File Surreply to Defendants' Motion for Attorneys' Fees. *See, e.g., Lake at Las Vegas Inv'rs Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991). Further, after reviewing the parties' briefs on each of these motions, the Court finds nothing novel or complex in the issues as argued in the briefs or revealed by the record that would necessitate oral argument. *See* LRCiv 7.2(f) ("The Court may decide motions without oral argument.").

# I.     BACKGROUND

Assuming familiarity with the factual and procedural history of this action, the Court will recount only those aspects of this litigation that are relevant to the pending issue of attorneys' fees and costs.

In the mid-1960s, Kustomotive—a partnership between Richard Korkes ("Korkes") and Daniel Dempski ("Dempski") that created automobiles for use in movies, television, and other forms of entertainment—entered into contracts with Twentieth Century-Fox Television, Inc. ("Fox") and Greenway Productions, Inc. ("Greenway") to build a "Batcycle" and a "Batgirl-Cycle" to be used in the 1960s *Batman* television show and movie and the *Batgirl* movie.  (Docs. 67-6; 67-16). One of these contracts, the Batcycle Agreement, stated that Kustomotive:

> quitclaims, assigns, transfers and sets over to [Fox and Greenway] any and all right, title and interest in and to the design of the Batcycle . . . and in and to the design or designs of the completed Batcycle . . . and any and all right, title and interest in and to said designs shall forever be vested in and owned solely by [Fox and Greenway].

(Doc. 67-6 at 7). The Batgirl-Cycle agreement contained the same language. (*See* Doc. 67-16 at 4).

The agreements did provide, however, the opportunity for Kustomotive to "acquire a percentage of net profits received from merchandising rights in and to the Batcycle" and Batgirl-Cycle "[s]ubject to entering into an agreement with Licensing Corporation of America" ("LCA"). (Docs. 67-6 at 5; 67-16 at 4–5). In this suit, Plaintiff claimed that Kustomotive entered into such a merchandising contract with LCA regarding the Batcycle ("Merchandising Contract"), (Doc. 72 at 2), and the Batgirl-Cycle, (Doc 28 at 4), while Defendants contested that such merchandising agreements were ever made, (Doc. 66 at 2).

Korkes and Dempski, the individuals who signed these alleged Merchandising Contracts, are now deceased. (*Id.*). Plaintiff claimed to be the assignee of Korkes' rights under the Batcycle and Batgirl-Cycle contracts and the related merchandising agreements.

(*Id.*). Plaintiff sued Defendants, who are allegedly successors in interest to LCA, arguing that Defendants owed Plaintiff a percentage of the merchandising profits from selling Batcycle and Batgirl-Cycle products. (*Id.*). Plaintiff alleged five causes of action in this lawsuit, including: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) conversion; (4) unjust enrichment; and (5) fraudulent concealment. (Doc. 28).

On October 5, 2017, Defendants filed a Motion for Summary Judgment, arguing that Plaintiff failed to prove the existence of the alleged Merchandising Contract. (Doc. 66). Based on the lack of evidence regarding the existence of the alleged Merchandising Contract, the Court granted Defendants' Motion for Summary Judgment on all of Plaintiff's six claims. (Doc. 86). After entry of judgment, Plaintiff filed a Motion for Reconsideration, (Doc. 88), which the Court denied. (Doc. 124).

## II.    PLAINTIFF'S MOTION FOR LEAVE TO FILE SURREPLY

After Defendants' Motion for Attorneys' Fees was fully briefed, Plaintiff filed a Motion for Leave to File Surreply to Defendants' Motion for Attorneys' Fees to address the "new evidentiary statements" allegedly made in Defendants' Reply. (Doc. 116). With this Motion for Leave to File Surreply (Doc. 116), Plaintiff also filed a proposed Surreply (Doc. 116-1 at 1–7) and eleven new exhibits (Docs. 116-2–116-13). In their Response In Opposition to Plaintiff's Motion for Leave to File Surreply, (Doc. 118), Defendants request that the Court permit them to supplement their request for attorneys' fees to include the additional post-judgment fees incurred by Defendants after they filed their Motion for Attorneys' Fees, including fees accrued in responding to Plaintiff's Motion for Leave to File Surreply and Plaintiff's Motion for Reconsideration. (Doc. 118 at 12–13). Thereafter, Plaintiff filed a Reply (Doc. 119) in support of its Motion for Leave to File Surreply.

In general, surreplies are "highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter." *Sims v. Paramount Gold & Silver Corp.*, No. CV 10-356-PHX-MHM, 2010 WL 5364783, at *8 (D. Ariz. Dec. 21, 2010) (quoting *In re Enron Corp. Sec.*, 465 F. Supp. 2d 687, 690 n.4 (S.D. Tex. 2006)). Accordingly, surreplies will not be permitted except "in the most extraordinary

circumstances." *Id.* (quoting *Beckner v. Astrue*, No. 06-1012-JTM, 2007 WL 2013608, at *1 (D. Kan. July 9, 2007)). Further, a surreply may be appropriate if the opposing party raises an entirely new issue in a reply brief, or if that party files new evidence with their reply brief. *ML Liquidating Tr. v. Mayer Hoffman McCann P.C.*, No. 2:10-CV-02019-RRB, 2011 WL 10451619, at *1 (D. Ariz. Mar. 11, 2011).

Although Plaintiff claims that Defendants' Reply "sets forth three factual arguments" that are "unsupported by evidence appearing in the record," (Doc. 116 at 1), this is not a valid basis for requesting a surreply. To the contrary, Defendants' Reply did not raise any novel issues or introduce any new evidence that would warrant granting Plaintiff leave to file a surreply. Defendants' Reply merely responded to, and rebutted, Plaintiff's arguments concerning the *Associated Indemnity* factor relating to the merits of Plaintiff's claim, (Doc. 111 at 4–7), which is not improper. *See Haldiman v. Cont'l Cas. Co.*, No. CV-13-00736-PHX-DLR, 2014 WL 12670637, at *9 n.6 (D. Ariz. Aug. 26, 2014), *aff'd*, 666 F. App'x 612 (9th Cir. 2016) (Plaintiff moved "for leave to file a surreply addressing Defendant's 'new argument.' Plaintiff's motion is denied because Defendant does not raise a new argument but only rebuts arguments first raised by Plaintiff in her opposition."). Moreover, Defendants' Reply merely cites to previously filed evidence.

Finally, the Court finds no "extraordinary circumstances" which would justify the granting of Plaintiff's request. Indeed, any argument that Defendants' Reply presents new factual arguments is without merit. First, to the extent Plaintiff claims that Defendants raised a new factual argument concerning whether Korkes and Dempski created "new intellectual property," (Doc. 116 at 2), Plaintiff misstates the record. After Defendants argued in their Motion for Attorneys' Fees that Korkes had assigned any rights he had to Fox and Greenway, and thus there was no logical reason that LCA would have gratuitously given Korkes merchandising royalties, (Doc. 92 at 12), Plaintiff asserted in his Response that it was "*undisputed* that Korkes and Dempski *created* the Batcycle—a new piece of intellectual property." (Doc. 106 at 10 (emphasis added)). Then, in their Reply, Defendants' argued in rebuttal that Korkes and Dempski did not *create* the Batcycle,

because the Batcycle had already been depicted in comic books before Mr. Korkes built a version of the Batcycle to be used in filming the television series. (Doc. 118 at 8 (citing Doc. 111 at 5)). This was a proper rebuttal argument to Plaintiff's assertion that Korkes "created" the Batcycle. Further, the Court agrees with Defendants that "there is no just reason to further extend the briefing on the motion for attorneys' fees to allow Plaintiff to argue over the immaterial issue of whether Korkes and Dempski created 'new intellectual property,' because any rights they may have had were assigned to Fox and Greenway." (*Id.* at 8–9).

Next, Plaintiff asserts that he should be permitted to file a surreply to point out that Twentieth Century Fox did not pay Plaintiff any funds to Plaintiff for Plaintiff's dismissal of the claims against it. (Doc. 116 at 2). Plaintiff makes this argument in response to the statement in Defendants' Reply that Plaintiff "makes no mention of the value of his settlement with Defendant Twentieth Century Fox." (Doc. 111 at 7). Defendants make this statement to point out that Plaintiff failed to present evidence in his Response (Doc. 106 at 8) that an attorneys' fees award would cause extreme hardship. Pointing out all of the financial assets which Plaintiff failed to discuss in establishing "extreme hardship" is a proper rebuttal argument which Defendants were permitted to make in their Reply. *See Haldiman*, 2014 WL 12670637, at *9 n.6. Moreover, Defendants even concede that Plaintiff entered a tolling agreement and did not receive any funds from Twentieth Century Fox, (Doc. 118 at 11), so a surreply discussing this topic is unnecessary.

To the extent Plaintiff claims that Defendants raised a "new" factual argument concerning the fact that George Barris, the person who built the Batmobile, did not receive royalties from Defendants, (Doc. 116 at 2), this argument was not raised for the first time in Defendants' Reply (Doc. 111). Rather, Defendants made this exact argument in their initial Motion for Attorneys' Fees. (*See* Doc. 92 at 12 ("George Barris, who built the iconic Batmobile for the same television series in the 1960s, was not given any merchandising rights in the Batmobile. He signed a similar agreement assigning all of his rights in the design of the Batmobile, and to the same entities that Korkes assigned his rights in the

design of the Batcycle.")). Finally, to the extent Plaintiff contends that Defendants raised a "new" factual argument concerning the fact that there was no admissible evidence of a merchandising agreement, (Doc. 116 at 2), this argument also fails. Defendants' Motion for Attorneys' Fees raised the argument that "Defendants established a just defense to all of Plaintiff's claims. There never was any alleged Merchandising Contract." (Doc. 92 at 12; *see also id.* at 13 ("Plaintiff . . . rested its claims upon an alleged Merchandising Contract that never existed.")). For these reasons, the Court denies Plaintiff's Motion for Leave to File Surreply to Defendants' Motion for Attorneys' Fees (Doc. 116). The Court will not consider Plaintiff's proposed Surreply, (Doc. 116-1 at 1–7), or the eleven new exhibits he filed therewith, (Docs. 116-2–116-13), in ruling on Defendants' Motion for Attorneys' Fees.

Furthermore, the Court denies without prejudice Defendants' request for additional post-judgment fees incurred after filing the Motion for Attorneys' Fees at issue, including fees accrued in responding to Plaintiff's Motion for Leave to File Surreply and Plaintiff's Motion for Reconsideration. (Doc. 118 at 12–13). Defendants' request for further fees incurred in responding to these post-judgment motions fails to comply with Local Rule ("LRCiv") 54.2(d), as Defendants do not submit a task-based, itemized statement of time expended in the preparation of their Response to Plaintiff's Motion for Leave to File Surreply (Doc. 118) and Response to Plaintiff's Motion for Reconsideration (Doc. 112).

## III. DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

On October 3, 2018, Defendants filed their Motion for Attorneys' Fees, seeking an award of attorneys' fees and costs pursuant to A.R.S. § 12-341.01 and LRCiv 54.2. (Doc. 92). In total, Defendants seek an award of $138,792.50, including $118,886.10 in attorneys' fees, $1,208.00 in paraprofessional fees, $1,200.00 in computerized legal research charges, and $17,498.40 in attorneys' fees incurred in the preparation of the Motion for Attorneys' Fees. (Doc. 92 at 17). Plaintiff filed his Response (Doc. 106) in opposition on October 25, 2018, arguing that Defendants' Motion for Attorneys' Fees should be denied, or else significantly reduced, because Defendants did not satisfy the

requirements of A.R.S. § 12-341.01. (Doc. 106 at 1).[3] On November 7, 2018, Defendants filed their Reply in support of their Motion for Attorneys' Fees. (Doc. 111).[4]

"A federal court sitting in diversity applies the law of the forum state regarding an award of attorneys' fees." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000) (citations omitted). Under Arizona law, "[i]n any contested action arising out of contract, express or implied, the court may award the successful party reasonable attorney fees." A.R.S. § 12-341.01(A). Therefore, to award attorneys' fees under this statute, the Court must find that this action arises out of a contract, that Defendants are the "successful" or prevailing party, that an award of attorneys' fees is appropriate, and that the requested fees are reasonable. *See Lexington Ins. Co. v. Scott Homes Multifamily Inc.*, No. CV-12-02119-PHX-JAT, 2016 WL 5118316, at *2 (D. Ariz. Sept. 21, 2016). Ultimately, any award under A.R.S. § 12-341.01 "should be made to mitigate the burden of the expense of litigation to establish a just claim or a just defense." A.R.S. § 12-341.01(B). The award "need not equal or relate to the attorney fees actually paid or contracted, but the award may not exceed the amount paid or agreed to be paid." *Id.*

## A. Eligibility for Fees Under A.R.S. § 12-341.01

Defendants are eligible for an award of reasonable attorneys' fees pursuant to A.R.S. § 12-341.01(A) as Defendants were the successful party in this litigation, and this suit involved a contested action arising out of contract.

### 1. Defendants were the "Successful" Party

Under Arizona law, "the trial court has substantial discretion to determine who is a 'successful party'" when determining an award of attorneys' fees under A.R.S. § 12-341.01. *Fulton Homes Corp. v. BBP Concrete*, 155 P.3d 1090, 1096 (Ariz. Ct. App. 2007)

---

[3] The Court deemed Plaintiff's Response (Doc. 106), and the two erratas filed therewith at Docs. 107 and 108, timely in its October 31, 2018 Order. (Doc. 110). In his Response, Plaintiff also argues that Defendants failed to establish their entitlement to fees under A.R.S. § 12-349. (Doc. 106 at 9–14). However, Defendants did not seek a fee award under A.R.S. § 12-349. Thus, the Court will not consider Plaintiff's argument as to § 12-349.

[4] In its October 31, 2018 Order, the Court granted Defendants' motion requesting an extension of time to file a reply. (Doc. 110). Accordingly, Defendants' Reply (Doc. 111) filed on November 7, 2018 was timely.

(citing *Pioneer Roofing Co. v. Mardian Constr. Co.*, 733 P.2d 652, 664 (Ariz. Ct. App. 1986)). "The decision as to who is the successful party for purposes of awarding attorneys' fees is within the sole discretion of the trial court, and will not be disturbed on appeal if any reasonable basis exists for it." *Maleki v. Desert Palms Prof'l Props., L.L.C.*, 214 P.3d 415, 422 (Ariz. Ct. App. 2009) (quoting *Sanborn v. Brooker & Wake Prop. Mgmt., Inc.*, 874 P.2d 982, 987 (Ariz. Ct. App. 1984)).

In this case, the Court granted Defendants' Motion for Summary Judgment, (Doc. 86 at 16), and the Clerk of the Court entered judgment in favor of Defendants on all claims and dismissed the case with prejudice, (Doc. 87). Plaintiff does not dispute that Defendants were the successful party. (*See generally* Doc. 106). As Defendants successfully defended each of Plaintiff's claims, the Court finds that Defendants were the "successful party" within the meaning of A.R.S. § 12-341.01.

2.  The Claims Arise out of Contract

In determining whether a claim arises out of a contract, the court considers the "nature of the action and the surrounding circumstances." *Marcus v. Fox*, 723 P.2d 682, 684 (Ariz. 1986) (citing *Wenk v. Horizon Moving & Storage Co.*, 639 P.2d 321, 322 (Ariz. 1982)). "It is well-established that a successful party on a contract claim may recover not only attorneys' fees expended on the contract claim, but also fees expended in litigating an 'interwoven' tort claim." *Modular Mining Sys., Inc. v. Jigsaw Techs., Inc.*, 212 P.3d 853, 860 (Ariz. Ct. App. 2009) (quoting *Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc.*, 6 P.3d 315, 318 (Ariz. Ct. App. 2000)). "The test to determine if an action arises out of contract is whether the plaintiff would have a claim 'even in the absence of a contract.'" *ML Servicing Co. v. Coles*, 334 P.3d 745, 753 (Ariz. Ct. App. 2014) (quoting *Ramsey Air Meds, L.L.C.*, 6 P.3d at 320–21). Thus, a tort claim arises out of a contract under A.R.S. § 12-341.01(A) "only when the tort could not exist 'but for' the breach or avoidance of contract." *Ramsey Air Meds, L.L.C.*, 6 P.3d at 320; *see also Barmat v. John & Jane Doe Partners A–D*, 747 P.2d 1218, 1222 (Ariz. 1987) ("Where . . . the duty breached is not imposed by law, but is a duty created by the contractual relationship, and would not exist

'but for' the contract, then breach of either express covenants or those necessarily implied from them sounds in contract."). Consequently, A.R.S. § 12-341.01 does not apply if the "contract is only a factual predicate to the action but not the essential basis of it." *Kennedy v. Linda Brock Auto. Plaza, Inc.*, 856 P.2d 1201, 1203 (Ariz. Ct. App. 1993). Nor does "[t]he mere reference to a contract in a complaint . . . make the action one 'arising out of contract.'" *Dooley v. O'Brien*, 244 P.3d 586, 591 (Ariz. Ct. App. 2010) (citation omitted).

### a. Plaintiff's Claims for Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing

Defendants first allege that they are eligible for an award of attorneys' fees for their defense of Plaintiff's claims for breach of contract and breach of the covenant of good faith and fair dealing. (Doc. 92 at 2). Defendants argue that Plaintiff's claim for breach of contract arose out of an alleged express contract, while Plaintiff's claim for breach of the covenant of good faith and fair dealing arose out of an alleged implied contract. (*Id.*). Plaintiff does not dispute that these two claims arise out of contract. (*See* Doc. 106 at 2–5).[5] As each of these claims were premised on the existence of an alleged Merchandising Contract, Defendants are eligible for a fee award under A.R.S. § 12-241.01(A) for the work performed defending these claims. *See Harris v. Maricopa Cty. Superior Court*, 631 F.3d 963, 974–75 (9th Cir. 2011) (holding that the defendant was eligible for an award of attorneys' fees for work performed on the plaintiff's claims for breach of contract and the duty of good faith and fair dealing, as these claims were "explicitly premised on the existence of an implicit contract that the district court found did not exist").[6]

---

[5] Plaintiff states that "[o]f the five claims presented by the Amended Complaint, three are not contract based." (Doc. 106 at 2). Plaintiff then goes on to discuss why he believes his claims of conversion, fraudulent concealment, and unjust enrichment do not arise out of contract. (*Id.* at 3–5).

[6] Although the Court granted summary judgment to Defendants based upon the absence of any genuine issue of fact concerning the existence of the alleged Merchandising Contract, (Doc. 86 at 13), Defendants are still entitled to an award of attorneys' fees under A.R.S. § 12–341.01 because "judgment in [their] favor [was] based upon the absence of the contract sued upon by the adverse party." *Lacer v. Navajo Cty.*, 687 P.2d 400, 402 (Ariz. Ct. App. 1984); *see also ML Servicing Co. v. Coles*, 334 P.3d 745, 753 (Ariz. Ct. App. 2014) ("[A]n action is considered to have arisen out of contract when the plaintiff asserted a contract and the defendant successfully proved that no contract existed."); *Nolan v. Starlight Pines Homeowners Ass'n*, 167 P.3d 1277, 1285

- 9 -

### b. Plaintiff's Unjust Enrichment, Conversion, and Fraudulent Concealment Claims

Defendants also argue that they are entitled to fees for defending against Plaintiff's unjust enrichment, conversion, and fraudulent concealment claims, because "the[se] other claims were 'inextricably intertwined' with the contract claims and predicated on a common set of facts." (Doc. 92 at 2). In specific, Defendants point out that "[a]ll of the claims were defeated based upon the non-existence of the alleged Merchandising Contract." (*Id.*). Plaintiff contends, however, that Defendants are not entitled to attorneys' fees incurred in defending these three claims because they did not "arise out of a contract," as § 12.341.01(A) requires. (Doc. 106 at 2–5).

Plaintiff now argues that his unjust enrichment claim "was alleged as an alternative claim if no contract existed" and "does not rely on the existence of a contract or a breach of a contract litigated in this action." (*Id.* at 5). Nevertheless, Plaintiff's Complaint indicates that the unjust enrichment claim was premised on the asserted failure of Defendants to pay Plaintiff for the "proceeds derived from licensing and merchandising contracts." (Doc. 28 at 9–10). The Court granted summary judgment to Defendants on this claim based upon the absence of any genuine issue of fact concerning the existence of the alleged Merchandising Contract. (Doc. 86 at 14). Plaintiff's unjust enrichment claim could not exist "but for" the breach or avoidance of the alleged Merchandising Contract, and is therefore considered to be an "interwoven" tort claim for purposes of A.R.S. § 12-341.01. *See Barmat*, 747 P.2d at 1222 ("Where . . . the duty breached is not imposed by law, but is a duty created by the contractual relationship, and would not exist 'but for' the contract, then breach of either express covenants or those necessarily implied from them sounds in contract."); *see also ML Servicing Co.*, 334 P.3d at 753 (holding, in part, that the trial court did not err in finding that the unjust enrichment claim arose out of contract because the

---

(Ariz. Ct. App. 2007) ("[A] court may award fees to a defendant in a contract action if the defendant prevails on the basis that there is no contract or there has been no breach of the contract."); *Haldiman v. Gosnell Dev. Corp.*, 748 P.2d 1209, 1217 (Ariz. Ct. App. 1987) ("The eventual finding that the contract sued upon by the plaintiff does not exist does not negate a defendant's claim for attorney's fees pursuant to A.R.S. § 12-341.01.").

unjust enrichment claim would not exist in the absence of the insurance contract which was paid out to the defendant).

Similarly, Plaintiff's fraudulent concealment claim could not exist "but for" the alleged Merchandising Contract. *Ramsey Air Meds, L.L.C.*, 6 P.3d at 320; *Barmat*, 747 P.2d at 1222. This claim was based upon allegations that Defendants "purposefully and knowingly concealed and denied the existence of . . . the Merchandising Contract . . . ." (Doc. 28 at 10). Therefore, the Court concludes that Plaintiff's fraudulent concealment claim arose out of contract within the meaning of § 12-341.01. *See SK Builders, Inc. v. Smith*, 436 P.3d 519, 528 (Ariz. Ct. App. 2019) (finding that homeowners' breach of contract and fraudulent misrepresentation claims against subcontractor were intertwined where fraudulent misrepresentation claim, which was based on the allegation that subcontractor knew it performed defective work under the contract and did not intend to cure the defects according to the contractually required plans and specifications, could not exist but for the alleged contract); *Sunstate Equip. Co. v. Davis*, No. 1 CA-CV-18-0222, 2019 WL 1499854, at *4 (Ariz. Ct. App. Apr. 4, 2019) (finding that a claim for fraudulent concealment arose out of contract for purposes of § 12-341.01 because it arose out of the alleged business transactions between the parties and could not exist "but for" the alleged breach of contract).

Finally, Plaintiff argues that his conversion claim was "premised on the theory that if an agreement between Twentieth Century Fox Television, Greenway Productions, and Korkes was invalid, then any use of the Batcycle design by any person other than Korkes was an unlawful exercise of dominion or control over his intellectual property." (Doc. 106 at 4). Although Plaintiff now claims that his conversion claim does not arise out of contract, (*id.*), the Court explicitly noted in its Order granting summary judgment that Plaintiff had previously argued that "if Korkes and Dempski did not receive merchandising rights, the assignment of rights to Fox and Greenway is subject to rescission." (Doc. 86 at 15 (citing Doc. 72 at 10)). Thus, Plaintiff's claim for conversion, by his own admission, was predicated upon proof of rescission of contract, and was "substantially dependent" upon

the contract being found unenforceable. *Modular Mining Sys., Inc.*, 212 P.3d at 861. Accordingly, Plaintiff's claim for conversion arose out of contract. *See Deutsche Credit Corp. v. Case Power & Equip. Co.*, 876 P.2d 1190, 1198–99 (Ariz. Ct. App. 1994) (finding that a claim for damages for conversion arose out of contract within the meaning of A.R.S. § 12-341.01 where conversion claim depended on the existence of an alleged breach of contract).

The record demonstrates that all six of Plaintiff's claims were based on the same set of facts, involving the common allegation that Defendants failed to pay royalties to Plaintiff based on the alleged Merchandising Contract. Defendants aver that they dedicated much time "to showing that there was no admissible evidence to prove the existence of the alleged Merchandising Contract"—a task which "had to be performed in defense of the breach of contract claim" but which was also "required in order to prevail on all claims." (Doc. 92 at 5–6). Similarly, Defendants point out that defending all of the claims involved identical discovery. (*Id.*). Accordingly, apportioning the attorneys' fees hours on a claim-by-claim basis is impracticable here, as all of Plaintiff's claims were so factually connected to the breach of contract claim that they required the same work already necessary for the defense of the contract claim. *See Bennett v. Baxter Grp., Inc.*, 224 P.3d 230, 236 (Ariz. Ct. App. 2010) (concluding that fees can be awarded on non-contract claims "when these claims are so factually connected to a contract claim that they require the same work that is already necessary for the defense or prosecution of the contract claim alone."); *Zeagler v. Buckley*, 219 P.3d 247, 249 (Ariz. Ct. App. 2009) ("[W]hen, as here, claims are so interrelated that identical or substantially overlapping discovery would occur, there is no sound reason to deny recovery of such legal fees."); *Schweiger v. China Doll Rest., Inc.*, 673 P.2d 927, 933 (Ariz. Ct. App. 1983) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (noting that "the plaintiff's claims for relief will [often] involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims.")).

Where a "contract in question is central to the issues of the case," as the Merchandising Contract is here, "it will suffice as a basis for a fee award." *In re Larry's Apartment, L.L.C.*, 249 F.3d 832, 836–37 (9th Cir. 2001). Further, "when the fees are related to work that encompassed all of the claims generally[,]" as they did here, "apportionment is not appropriate[.]" *Dahn World Co. v. Chung*, No. CV 05-3477-PCT-JAT, 2006 WL 3313951, at *5 (D. Ariz. Nov. 13, 2006). As a result, the Court finds that Defendants are eligible for an award of attorneys' fees for work on all six of Plaintiff's claims, as all six of these claims arise out of contract, or are "interwoven" tort claims.

## B.    Discretion in Awarding Attorneys' Fees

"Mere eligibility [under § 12-341.01(A)] does not establish entitlement to fees." *Harris*, 631 F.3d at 974 (citation omitted); *see Manicom v. CitiMortgage, Inc.*, 336 P.3d 1274, 1283 (Ariz. Ct. App. 2014) (holding that an award of attorneys' fees under A.R.S. § 12-341.01(A) "is permissive" and "not mandatory"); *Motzer v. Escalante*, 265 P.3d 1094, 1095 (Ariz. Ct. App. 2011) ("[T]here is no presumption that a successful party should be awarded attorney fees under § 12-341.01."). Rather, the court must exercise its discretion to determine whether attorneys' fees should be awarded. *Associated Indem. Corp. v. Warner*, 694 P.2d 1181, 1184 (Ariz. 1985); *see State Farm Mut. Auto. Ins. Co. v. Arrington*, 963 P.2d 334, 340 (Ariz. Ct. App. 1998) ("The trial court has broad discretion in determining whether to award attorneys' fees under A.R.S. section 12–341.01(A).").

In determining whether to exercise discretion to award attorneys' fees under A.R.S. § 12-341.01(A), the court must consider the following six factors:

> (1) the merits of the unsuccessful parties' claim or defense; (2) whether litigation could have been avoided or settled; (3) whether assessing fees against the unsuccessful party would cause extreme hardship; (4) whether the successful party prevailed with respect to all relief sought; (5) the novelty of the issues; and (6) whether the award will overly deter others from bringing meritorious suits.

*Velarde v. PACE Membership Warehouse, Inc.*, 105 F.3d 1313, 1319 (9th Cir. 1997) (citing

*Associated Indem. Corp.*, 694 P.2d at 1184). "[T]he weight given to any one factor is within the court's discretion." *Moedt v. Gen. Motors Corp.*, 60 P.3d 240, 245 (Ariz. Ct. App. 2002).

The Court will exercise its discretion in awarding attorneys' fees to Defendants under A.R.S. § 12-341.01(A) as the *Associated Indemnity* factors weigh in Defendants' favor. Each *Associated Indemnity* factor is discussed in turn below.

### 1.  Whether Plaintiff's Claims Were Meritorious

The first factor, the merits of the unsuccessful party's claims, weighs in favor of an award of attorneys' fees. Defendants argue that Plaintiff's claims were not meritorious because Plaintiff lacked any evidence to prove his claims as there never was any Merchandising Contract entitling Korkes to merchandising royalties. (Docs. 92 at 8–11; 111 at 4–5). According to Defendants, "there was nothing to Plaintiff's contract claims but wishful thinking." (Doc. 111 at 4). In response, Plaintiff argues that his claims were meritorious because he spent "nearly four years investigating the claims" before he decided to file suit. (Doc. 106 at 6). Plaintiff also describes various documents which he believes illustrate the merit of his claims. (*Id.* at 6–8). Nevertheless, none of the documents Plaintiff points to in his Response (Doc. 106) demonstrate the existence of the alleged Merchandising Contract. Indeed, none of Plaintiff's claims survived summary judgment because Plaintiff failed to present any evidence of the alleged Merchandising Contract upon which each of his claims was based. (*See* Doc. 86).

In adopting A.R.S. § 12-341.01, the "legislature intended that the risk of paying the opposing party's attorneys' fees would encourage more careful analysis prior to filing suit." *Chaurasia v. Gen. Motors Corp.*, 126 P.3d 165, 176 (Ariz. Ct. App. 2006). Had Plaintiff engaged in careful analysis here, he may have discovered that there was no admissible evidence that any Merchandising Contract ever existed. Accordingly, the Court finds that Plaintiff's claims lacked merit and the first factor supports awarding fees to Defendants in order "to mitigate the burden of the expense of litigation to establish . . . a just defense." A.R.S. § 12-341.01(B).

## 2. Whether the Litigation Could Have Been Avoided or Settled

The second factor, whether the litigation could have been avoided or settled, does not weigh against awarding attorneys' fees to Defendants. *Associated Indem. Corp.*, 694 P.2d at 1184. "This factor looks primarily to whether a non-litigation solution was not pursued that could have solved the problem and whether litigation was not necessary." *11333, Inc. v. Certain Underwriters at Lloyd's, London*, No. CV-14-02001-PHX-NVW, 2018 WL 1570236, at *6 (D. Ariz. Mar. 30, 2018).

Plaintiff contends that he attempted to "pursue informal resolution" for the six months between when he filed the suit and served the Complaint. (Doc. 106 at 8). Conversely, Defendants claim that this litigation could not have been avoided. (Doc. 92 at 11). Defendants reasoned that they could not settle this frivolous claim because opportunistic plaintiffs frequently target motion picture studios with frivolous claims, and thus settling this case would invite more litigation in the future. (*Id.*). Nevertheless, Defendants endeavored to limit the expense of this litigation by requesting permission to file an early motion for summary judgment, (Doc. 50), and by limiting the amount of discovery requested by Plaintiff. (Doc. 92 at 12–13). Indeed, Defendants did not notice any depositions, nor burden Plaintiff with any interrogatories or requests for admissions. (*Id.* at 13). Further, Defendants aver that they "made it clear to Plaintiff that they were prepared to honor any merchandising contract, if one had in fact been agreed to," but "there never was any alleged Merchandising Contract." (*Id.* at 12 (citing Doc. 93-3, Decl. of Wayne Smith at ¶¶ 5–6)). As "the legitimate focus of this factor is not to penalize a party with a just . . . defense for failing to . . . pay more than is owed[,]" the Court concludes that Defendants' actions were not superfluous in achieving the ultimate result. *11333, Inc.*, 2018 WL 1570236, at *6. Rather, they were necessary to defend against Plaintiff's meritless claims. Therefore, the Court finds that this factor does not weigh against awarding attorneys' fees.

3. <u>Whether Assessing Fees Against Plaintiff Would Cause Extreme Hardship</u>

Defendants argue that there is no evidence supporting a finding that awarding attorneys' fees would cause Plaintiff extreme hardship. (Doc. 92 at 12). For this factor to weigh against awarding fees, the party asserting financial hardship "has the burden of coming forward with *prima facie* evidence of financial hardship." *Woerth v. City of Flagstaff*, 808 P.2d 297, 305 (Ariz. Ct. App. 1990) (finding that the party asserting financial hardship must "present specific facts by affidavit or testimony"); *see also Rudinsky v. Harris*, 290 P.3d 1218, 1225 (Ariz. Ct. App. 2012) (finding that the party asserting financial hardship failed to carry its burden of presenting *prima facie* evidence when it did not present any affidavits and failed to respond to the other party's request for financial information). Plaintiff falls short of this standard.

Plaintiff submitted a Declaration which claims that he will suffer "extreme hardship" if the Court awards fees to Defendants. (Doc. 106-3 at 1).[7] Plaintiff avers in this Declaration:

> I am a small businessman with a small dealership that sometimes does not make as much in a month as the attorney's fee motion cost to draft. While I own real property, it is fully encumbered. I do not maintain retirement accounts or other assets of that nature that would provide funds to pay such a large fee award.

(*Id.*).

Defendants counter that this excerpt from Plaintiff's Declaration only "offers

---

[7] Although Plaintiff's Declaration is signed, the Declaration fails to substantially comply with the requirements of 28 U.S.C. § 1746, which requires that a declaration declare "under penalty of perjury that the foregoing is true and correct." *See Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995) (stating that a pleading substantially complied with § 1746 when the plaintiff stated under penalty of perjury that the contents were true and correct); *Corona v. Quad Graphics Printing Corp.*, 218 F. Supp. 3d 1068, 1071 (C.D. Cal. 2016) ("substantial compliance requires the declarant to make two assertions in the declaration: (1) that the statements in the declaration were made 'under penalty of perjury,' and (2) 'that the contents were true and correct.'") (quoting *Luxul Tech. Inc. v. NectarLux, LLC*, No. CV 14-03656 LHK, 2016 WL 3345464, at *5 (N.D. Cal. June 16, 2016)).

ambiguous and carefully parsed statements in his declaration, '[i]nstead of providing tax returns, bank statements, or income slips showing concrete evidence that his income or assets are insufficient to pay attorneys' fees in this case.'" (Doc. 111 at 7 (quoting *Ogden v. CDI Corp.*, No. CV08-02180-PHX-DGC, 2013 WL 1149913, at *2 (D. Ariz. Mar. 20, 2013), *aff'd*, 599 F. App'x 320 (9th Cir. 2015)). The Court agrees, as Plaintiff's affidavit fails to provide specific or concrete evidence. *See Goldberg v. Pac. Indem. Co.*, No. CV 05-2670-PHX-JAT, 2009 WL 1327528, at *3 (D. Ariz. May 13, 2009) (finding that this factor weighed against plaintiffs when they failed to "present specific facts to determine whether an award of attorney's fees in this case would constitute extreme hardship"). Plaintiff offers no evidence to back up the unsworn, unproven assertions in his Declaration; he does not address how much his business makes annually, says nothing about his brokerage accounts or bank accounts, and fails to provide any tax returns, bank statements or income slips.

Without concrete evidence, the Court is unable to determine what type of hardship an award of attorneys' fees would cause Plaintiff. "While Plaintiff argues that he will suffer extreme hardship if required to pay attorneys' fees, argument is not enough." *Ogden*, 2013 WL 1149913, at *3. As Plaintiff has failed to carry his burden of proof, this factor weighs in favor of an award of attorneys' fees. *See id.*; *Essex Ins. Co. v. W.G.S., LLC*, No. CV 08-1402-PHX-JAT, 2010 WL 3239393, at *4 (D. Ariz. Aug. 16, 2010).

### 4. Whether Defendants Prevailed in Full

As the Court entered judgment in Defendants' favor after granting Defendants' Motion for Summary Judgment on all claims, (Docs. 86–87), Defendants argue that this factor favors an award of fees. (Doc. 92 at 13). The Court agrees. While Plaintiff contends that it sought reconsideration of the Court's Order granting summary judgment, (Doc. 106 at 8), the Court denied Plaintiff's Motion for Reconsideration. (*See* Doc. 124). Accordingly, the Court finds that this factor weighs in favor of awarding attorneys' fees. *See Ranasinghe v. Great W. Cas. Co.*, No. CV-14-00564-PHX-ROS, 2015 WL 13333695, at *3 (D. Ariz. Mar. 18, 2015) (finding that Defendant prevailed in full after the court

granted summary judgment based on the nonexistence of a contract).

### 5. Whether the Legal Issues Were Novel

This factor will weigh against awarding attorneys' fees if a claim is novel or has not previously been adjudicated. *See Scottsdale Mem'l Health Sys., Inc. v. Clark*, 791 P.2d 1094, 1099 (Ariz. Ct. App. 1990) (finding a claim novel when it involved "unanswered questions concerning Arizona law"); *see also 11333, Inc.*, 2018 WL 1570236, at *5 ("To weigh against a fee award for novelty, the ultimately unmeritorious claims need to be serious in the fabric of legal doctrine, supported by evidence, and worthy of presentation for neutral decision.").

Defendant argues that Plaintiff pursued basic, straight-forward breach of contract claims which "were not supported by evidence, and were not worthy of presentation for neutral decision." (Doc. 92 at 13). Plaintiff admits that the legal issues in this case were "standard tort and contract theories." (Doc. 106 at 8). Although Plaintiff then asserts that "Defendants' defenses were not," he fails to provide any reasoning for this conclusory statement. (*Id.*). Here, the legal issues related to the contract and tort claims were not novel. *See Firetrace USA, LLC v. Jesclard*, No. CV 07-2001-PHX-ROS, 2012 WL 12960881, at *4 (D. Ariz. Jan. 17, 2012) (finding that breach of contract claims did not raise novel issues). Accordingly, the Court finds that this factor favors an award of fees.

### 6. Whether an Award Would Discourage Tenable Claims

This factor will weigh against an award of attorney fees if an "award would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorney's fees." *Harris*, 631 F.3d at 974 n.3 (quoting *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1049 (Ariz. 1985)). Defendants contend that an award of fees would not have this effect because "Plaintiff's claims and the positions he took were not well thought out, and an award of fees will not deter those with *tenable* claims from pursuing them." (Doc. 92 at 14). In contrast, Plaintiff argues that assessing fees against "a litigant with a legitimate claim [who] loses a thoroughly-investigated claim on technical grounds" will discourage

other litigants. (Doc. 106 at 9).

The Court finds that an award of fees here will not dissuade parties with tenable claims from litigating. *See 11333, Inc.*, 2018 WL 1570236, at *5 ("The factor to be considered . . . is whether a [plaintiff] will be deterred from bringing a tenable claim, not from gambling on a legal theory in defiance of language and devoid of evidence."). Although Plaintiff asserts that his claims were legitimate and thoroughly investigated, (Doc. 106 at 8–9), it remains that Plaintiff failed to introduce any admissible evidence of the Merchandising Contract. (*See* Doc. 86). Rather than presenting a tenable claim, "Plaintiff gambled on [] unsupported claim[s]" which were "devoid of evidence." (Doc. 92 at 14). "While the purpose of the [attorneys' fees] statute is to compensate the defendant for the burden of the cost of a just defense, awarding fees could have a collateral benefit of chilling this kind of meritless and costly litigation." *11333, Inc.*, 2018 WL 1570236, at *6. As a result, the Court finds that this factor supports an award of fees.

After considering the *Associated Indemnity* factors, the Court finds that an award of attorneys' fees under A.R.S. § 12-341.01 for Defendant's defense of Plaintiff's claims is appropriate.

## C.    "Reasonableness" of the Requested Attorneys' Fees Award

After concluding that awarding attorneys' fees is appropriate under the factors laid out in *Associated Indemnity*, the court must then decide whether the requested fees are reasonable. *Manone v. Farm Bureau Prop. & Cas. Co.*, No. CV-15-08003-PCT-JAT, 2016 WL 1059539, at *3 (D. Ariz. Mar. 17, 2016). "Once a party establishes its entitlement to fees and meets the minimum requirements in its application and affidavit for fees, the burden shifts to the party opposing the fee award to demonstrate the impropriety or unreasonableness of the requested fees." *Nolan v. Starlight Pines Homeowners Ass'n*, 167 P.3d 1277, 1285–86 (Ariz. Ct. App. 2007). However, "[i]f that party fails to make such a showing of unreasonableness, the prevailing party is entitled to full payment of the fees." *Geller v. Lesk*, 285 P.3d 972, 976 (Ariz. Ct. App. 2012) (citing *McDowell Mountain Ranch Cmty. Ass'n, Inc. v. Simons*, 165 P.3d 667, 672 (Ariz. Ct. App. 2007)). On the other hand,

should "the party opposing the award show[] that the otherwise prima facie reasonable fee request is excessive, the court has discretion to reduce the fees to a reasonable level." *Geller*, 285 P.3d at 976.[8]

To determine whether the requested attorneys' fees are reasonable, "the Court looks to whether the hourly rate is reasonable and whether the hours expended on the case are reasonable." *Maguire v. Coltrell*, No. CV-14-01255-PHX-DGC, 2015 WL 3999188, at *3 (D. Ariz. July 1, 2015) (citing *Schweiger*, 673 P.2d at 931–32). Reasonability is generally analyzed under the "lodestar method," which has been adopted as "the centerpiece of attorney's fee awards." *Leavey v. UNUM/Provident Corp.*, No. 2: CV-02-2281-PHX-SMM, 2006 WL 1515999, at *23 (D. Ariz. May 26, 2006) (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989)).[9] "The lodestar method of calculating reasonable attorneys' fees is a two-step process whereby a court multiplies 'the number of hours reasonably expended by a reasonable hourly rate' and then determines if any of the identified lodestar factors favor enhancing or reducing the arrived at product." *Manone*, 2016 WL 1059539, at *3 (quoting *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000)).

"Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 (9th Cir. 2001). Thus, courts may also consider the thirteen factors listed in LRCiv 54.2(c)(3) when determining the reasonableness of an attorneys' fee request. *See W. All. Bank v. Jefferson*, 2:14-CV-0761-PHX-JWS, 2016 WL 1392077, at *1 (D. Ariz. Apr. 8, 2016). These thirteen factors include:

> (A) The time and labor required by counsel; (B) The novelty and difficulty of the questions presented; (C) The skill requisite to perform

---

[8] The district court "has broad discretion in fixing the amount of attorneys' fees[,]" as this discretion is "limited only to the extent that such award may not exceed the amount paid or agreed to be paid." *Pettay v. Ins. Mktg. Servs., Inc. (W.)*, 752 P.2d 18, 21 (Ariz. Ct. App. 1987) (internal quotations and citations omitted).

[9] *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001) ("District courts must calculate awards for attorneys' fees using the 'lodestar' method.").

the legal service properly; (D) The preclusion of other employment by counsel because of the acceptance of the action; (E) The customary fee charged in matters of the type involved; (F) Whether the fee contracted between the attorney and the client is fixed or contingent; (G) Any time limitations imposed by the client or the circumstances; (H) The amount of money, or the value of the rights, involved, and the results obtained; (I) The experience, ability and reputation of counsel; (J) The 'undesirability' of the case; (K) The nature and length of the professional relationship between the attorney and the client; (L) Awards in similar actions; and (M) Any other matters deemed appropriate under the circumstances.

LRCiv 54.2(c)(3).

Pursuant to LRCiv 54.2(d), Defendants submitted with their Motion for Attorneys' Fees a statement of consultation, (Doc. 93-4), a task-based, itemized statement of time expended and expenses incurred, (Docs. 92-4; 93-5), and an affidavit of moving counsel, (Doc. 92-3). As Defendants established their entitlement to fees and Plaintiff failed to demonstrate that the requested fees are unreasonable, *Nolan*, 167 P.3d at 1285–86, the Court concludes than an award of **$138,792.50** in attorneys' fees and costs is reasonable, as set forth below.

### 1. Reasonable Hourly Rate

To determine reasonable attorneys' fees in commercial litigation, the analysis begins with the actual billing rate that the lawyer charged in the particular matter. *See Schweiger*, 673 P.2d at 931. "The best indicator of a reasonable hourly rate for a fee-paying client is the rate charged by the lawyer to the client." *Jackson v. Wells Fargo Bank, N.A.*, No. CV-13-00617-PHX-SPL, 2015 WL 13567069 at *2 (D. Ariz. Oct. 23, 2015) (citing *Schweiger*, 673 P.2d at 931–32). However, "upon the presentation of an opposing affidavit setting forth reasons why the hourly billing rate is unreasonable, the court may utilize a lesser rate." *Schweiger*, 673 P.2d at 932.

In their Motion for Attorneys' Fees, Defendants ask that the Court award fees at the hourly rate charged to—and paid by—its clients. (Docs. 92 at 15; 92-13 at ¶ 13). In support, Defendants set forth the Declaration of Sid Leach, lead counsel, which avers that the billing

rates here are reasonable given the nature of the action, and the skill and experience of the professionals involved. (Doc. 92-3). Defendants' lead counsel, Sid Leach, is a partner in the law firm of Snell & Wilmer, L.L.P. and has over 39 years of experience in litigation. (Doc. 92-3 at ¶ 4). In this action, Mr. Leach originally charged his standard rate of $690.00/hour, but discounted his rate to $552.00/hour in March 2017. (*Id.* at ¶¶ 5, 14). In 2018, Mr. Leach's standard billing rate increased to $715.00/hour, but he continued to charge Defendants the discounted rate of $552.00/hour. (*Id.* at ¶ 14). Gregory Marshall, another partner at Snell & Wilmer, L.L.P. engaged in this matter, has over 20 years of experience. (*Id.* at ¶ 6). Mr. Marshall's billing rate in this case was $505.00/hour. (*Id.*). Another associate from Snell & Wilmer's billing rate was $215.00/hour, while various paralegals, paralegal assistants, and a research librarian had billing rates ranging from $105.00/hour to $240.00/hour based on experience. (*Id.* at ¶¶ 7–11).

Plaintiff asserts that Mr. Leach and Mr. Marshall's hourly rates are unreasonable, and asks that they be reduced to $350.00/hour. (Doc. 106 at 14–15).[10] In support, Plaintiff attaches a 2016 Economics of Law Practice in Arizona survey which states that $350.00/hour is the 75th percentile billing rate for intellectual property practitioners. (Doc 106-9). However, the statewide survey submitted by Plaintiff "does little to determine the appropriate billing rate for an attorney in Phoenix that is experienced in [intellectual property] litigation." *Jackson*, 2015 WL 13567069, at *2 (finding that a similar statewide survey from 2013 failed to establish that the billing rates charged by counsel for the defendants were excessive or unreasonable). Plaintiff fails to show that the hourly rates requested in Defendants' Motion for Attorneys' Fees do not fall within the Phoenix legal market's prevailing rates.

As evidence of reasonableness, Defendants not only establish that the rates requested in its Motion for Attorneys' Fees were the rates actually charged, but also show that these rates were "generally lower than the rates customarily charged by outside firms that Warner Bros. retains for intellectual property work of this type." (Doc. 93-3 at ¶ 3

---

[10] Plaintiff does not claim that the hourly rates of any of the other professionals are unreasonable. (*See* Doc. 106 at 14–15).

(Decl. of Wayne Smith, Warner Brothers Entertainment Inc.'s Senior Vice President of Corporate Legal)). Moreover, Defendants cite to cases demonstrating that Mr. Leach and Mr. Marshall's hourly rates are reasonable for attorneys of their skill and experience in the Phoenix legal market. *See 11333, Inc.*, 2018 WL 1570236, at *6 (finding that hourly rate of $500.00 "is within the Phoenix market for highly skilled, experienced, and regarded lawyers for complex high-dollar commercial litigation"); *Western Alliance Bank v. Jefferson*, No. 2:14-cv-0761-JWS, 2016 WL 1392077, at *2 & n.11 (D. Ariz. Apr. 8, 2016) (awarding an hourly rate of $535.50); *Skydive Arizona, Inc. v. Quattrochi*, No. CV 05-2656-PHX-MHM, 2011 WL 1004945, at *4 (D. Ariz. Mar. 22, 2011) (awarding in 2011 an hourly rate of $488.00 to Mr. Leach under 15 U.S.C. § 1117).[11] Indeed, in *Skydive Arizona, Inc. v. Quattrochi*, the Court stated: "[t]he Court's experience teaches it that Mr. Leach's credentials and experience set him apart from many of the attorneys who practice before this Court." 2011 WL 1004945, at *3.

Defendants were "entitled to retain competent, experienced counsel" to represent them, and, given counsel's experience and credentials, "a commensurate hourly rate was not unreasonable." *Assyia*, *v. State Farm Mut. Auto. Ins. Co.*, 273 P.3d 668, 674 (Ariz. Ct. App. 2012). Accordingly, the Court concludes that the hourly rates charged by counsel for Defendants and their staff are reasonable.

### 2. Hours Reasonably Expended

Generally, the prevailing party is "entitled to recover a reasonable attorneys' fee for every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest[.]" *Schweiger*, 673 P.2d at 931–32 (quoting *Twin City Sportservice v. Charles O. Finley & Co.*, 676 F.2d 1291, 1313 (9th Cir. 1982)). The party opposing the fee award "must provide specific references to the record and specify which amount of items are excessive." *In re Indenture of Tr. Dated Jan. 13, 1964*, 326 P.3d 307, 319–20 (Ariz. Ct. App. 2014). An award may be

---

[11] Plaintiff incorrectly claims that Mr. Leach was granted an hourly rate of $331 per hour in *Skydive Arizona, Inc. v. Quattrochi*. (Doc. 106 at 15). *See* 2011 WL 1004945, at *4 ("Accordingly, the reasonable rate is $488 for Mr. Leach . . . ."). Mr. Leach now has several more years of experience since this 2011 decision.

reduced for hours not "reasonably expended." *Travelers Indem. Co. v. Crown Corr, Inc.*, No. CV 11-0965-PHX-JAT, 2012 WL 2798653, at *6 (D. Ariz. July 9, 2012).

Defendants provided with their Motion for Attorneys' Fees a task-based, itemized statement of time expended and expenses incurred, which demonstrates that counsel and other professionals spent 223.1 hours on this case over a two year period. (Doc. 92-4). Defendants also provided another task-based, itemized statement of time showing that Defendants spent 31.7 hours preparing the Motion for Attorneys' Fees at issue. (Doc. 93-5). The hours expended on this case by Defendants were reasonable.

### a. Delegation of Tasks to Associates with Lower Hourly Rates and Clerical Tasks

Plaintiff claims that tasks such as legal research and drafting statements of fact should have been delegated to lower-billing associates. (Doc. 106 at 15). Plaintiff also claims that responses to discovery requests should have been delegated to a paralegal or legal assistant as no substantive responses were provided. (*Id.*). Plaintiff does not cite any authority for these claims. The Court's research has revealed no duty for counsel to delegate legal work to a lower-billing professional.

Plaintiff also asserts that Mr. Leach unnecessarily did secretarial tasks, which he claims include: preparing a notice of appearance on behalf of Warner Brothers; attending to document production concerning the confidential Fox television contract; preparing a notice of service concerning responses to requests for production, requests for admission, and requests for interrogatories; and corresponding with opposing counsel regarding upcoming depositions. It is true that "tasks which are clerical in nature are not recoverable." *Pearson v. Nat'l Credit Sys., Inc.*, No. 2:CV-10-0526-PHX-MHM, 2010 WL 5146805, at *3 (D. Ariz. Dec. 13, 2010); *see also Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) (holding that clerical tasks such as filing and document organization "should have been subsumed in firm overhead rather than billed at paralegal rates"). Nevertheless, after thorough review of those billing entries which Plaintiff claims involve "secretarial" work, the Court overrules Plaintiff's objections. These tasks were not clerical.

### b. Duplicative Time Entries

Plaintiff argues that some of Defendants' time entries are duplicative. (Doc. 106 at 16). After reviewing the disputed entries, the Court cannot conclude that they constitute unreasonable, needless duplication. Plaintiff points to entries from August and September 2017 where he claims lead counsel unnecessarily repeated research previously completed by an associate on a statute of limitations issue. (*Id.*). However, "a competent lawyer won't rely entirely on last year's or even last month's research." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (finding that "*necessary* duplication . . . inherent in the process of litigating over time" is part of the hours reasonably expended for purposes of an award of attorneys' fees); *Sunstone Behavioral Health, Inc. v. Alameda Cty. Med. Ctr.*, 646 F. Supp. 2d 1206, 1214 (E.D. Cal. 2009) (finding that duplication of work between multiple attorneys was not unreasonable). Further, lead counsel for Defendants avers that he used the research of this other attorney to add a section to Defendants' Motion for Summary Judgment regarding the statute of limitations. (Doc. 92-3 ¶ 29). He believed using this attorney to research the statute of limitations defense was "prudent and reduced the cost of litigation" because that attorney had "faced a similar issue in another case and [was] already generally familiar with the relevant Arizona law." (*Id.*).

Plaintiff also claims that revisions of various declarations were unnecessarily duplicative. The Court is unpersuaded. (Doc. 106 at 16). While some of the allegedly duplicative entries to which Plaintiff objects relate to the same general topic, the time is clearly spent on different tasks. It also appears that a number of the entries Plaintiff claims are duplicative are either a continuation of the same task, or performed with a different purpose, such as "reviewing" or "editing" as opposed to "drafting" a particular document. For example, in one entry, Mr. Leach prepares responses and objections to Plaintiff's interrogatories, while in another entry Mr. Leach communicates with Plaintiff's counsel concerning the number of interrogatories exceeding the maximum number allowed under the Rules. (Doc. 92-4). The Court concludes that none of the entries to which Plaintiff objects were unnecessarily duplicative.

### c.  Air Travel Time

Defendants' request includes four hours of air travel time for depositions in Burbank, California. (*See* Doc. 92-4). Defendants aver that air travel time "is customarily charged to clients when it is necessary to travel on a client matter" and further state that Defendants paid that charge. (Doc. 92-3 at ¶ 27). According to Defendants' lead counsel, this travel time deprived him of the opportunity to work for other paying clients during that time. (*Id.*). Lead counsel also states that he believes the four hours of air travel time charged was reasonable, and understates the actual time that was required. (*Id.*). Plaintiff does not object to an award for air travel time. (*See* Doc. 106).[12]

Under the substantive law of Arizona, all reasonable fees are compensable under A.R.S. § 12-341.01(A). *See Assyia*, 273 P.3d at 674 ("Once a litigant establishes entitlement to a fee award, the touchstone under § 12-341.01 is the reasonableness of the fees."). However, LRCiv 54.2(e)(2)(D) provides that "[o]rdinarily air travel time should not be charged." As applied, LRCiv 54.2(e)(2)(D) "goes beyond enabling the court to determine reasonableness [and] . . . excludes fees for attorney air travel time as beyond what the Arizona statute authorizes for compensation, though the market shows them to be reasonable and charged and paid in fact." *11333, Inc. v. Certain Underwriters at Lloyd's, London*, No. CV-14-02001-PHX-NVW, 2018 WL 2322783, at *2 (D. Ariz. May 22, 2018) ("[T]his application of LRCiv 54.2(e)(2)(D) to exclude fees that are compensable under A.R.S. § 12-341.01 exceeds the district court's authority under 28 U.S.C. § 2071(a) to prescribe procedural rules."). As the Court agrees with the decision in *11333, Inc. v. Certain Underwriters at Lloyd's, London* that the Local Rule cannot validly exclude such services from the reasonable attorneys' fees that can be awarded under A.R.S. § 12-341.01(A), the Court concludes that Defendants are entitled to include the four hours of air travel time.

---

[12] Plaintiff does, however, request that Defendants' hourly rate for the air-travel time be reduced to $350 per hour. (Doc. 106). As explained above, the Court will not reduce counsel for Defendants' hourly rates, as the Court finds them to be reasonable in light of counsels' experience.

### d. Legal Fees Associated with Defendants' Motion for Attorneys' Fees

In addition to other fees, Defendants seek to recover $17,498.40 in attorneys' fees for the 31.7 hours expended preparing their Motion for Attorneys' Fees. (Doc. 93-5). Under the Court's Local Rules, "[i]f the moving party claims entitlement to fees for preparing the motion and memorandum for award of attorneys' fees and related non-taxable expenses, such party also must cite the applicable legal authority supporting such specific request." LRCiv 54.2(c)(2).

In compliance with the Local Rule's requirement, Defendants cite *Harris v. Maricopa County Superior Court* for the proposition that "Arizona law supports the recovery of attorneys' fees for the preparation of a successful fee application." (Doc. 92 at 7 (citing *Harris*, 631 F.3d at 979). The *Harris* decision refers to *Schweiger v. China Doll Restaurant, Inc.*, 673 P.2d at 931–32, as support for this authority. In *Schweiger*, the court stated that the prevailing party is entitled to recover reasonable attorneys' fees for "every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit of a successful appeal." *Schweiger*, 673 P.2d at 932 (internal quotations and citation omitted). The *Schweiger* court then listed several examples of the types of services which might be included in a fee application, including time expended "[p]reparing post-decision motions." *Id.* "A motion for attorneys' fees is a post-decision motion and it takes considerable time in some cases for any 'reasonable and prudent lawyer' to prepare an attorney's fees application which 'militates the burden of the expense of litigation to establish a just claim or just defense' for the prevailing party." *Gametech Int'l, Inc. v. Trend Gaming Sys., L.L.C.*, 380 F. Supp. 2d 1084, 1101 (D. Ariz. 2005) (concluding that reasonable attorneys' fees incurred in preparing the fee application are recoverable in that case and under Arizona law) (quoting *Associated Indemnity*, 694 P.2d at 1183). Following *Harris*, *Schweiger*, and *Gametech Int'l, Inc.*, the Court concludes that Defendants may recover their reasonable attorneys' fees incurred in preparing the Motion for Attorneys'

Fees at issue.

Although Plaintiff claims that the amount Defendants' spent preparing their Motion for Attorneys' Fees was unreasonable because it is "not substantially original work that would justify such an expenditure of time," (Doc. 106 at 15), Plaintiff fails to cite any support for this assertion. After reviewing Defendants' task-based, itemized statement of time expended on its Motion for Attorneys' Fees, (Doc. 93-5), the Court concludes that an award of $17,498.40 in attorneys' fees for the 31.7 hours expended is reasonable.

### 3. Whether the Award Should Be Adjusted or Enhanced

"Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Ferland*, 244 F.3d at 1149. Thus, courts may also consider the thirteen factors listed in LRCiv 54.2(c)(3) when determining the reasonableness of an attorneys' fee request.

Many of these factors have already been calculated in the lodestar analysis and need not be re-introduced as a means of adjusting the fee award. For example, the first factor, the time and labor required by counsel, LRCiv 54.2(c)(3)(A), was analyzed in the section of this Order discussing the reasonableness of the hours billed, *supra*. The hours expended by counsel for Defendants and their staff were reasonable. As to the second factor, the novelty and difficulty of the legal questions presented, LRCiv 54.2(c)(3)(B), the Court previously addressed this in its discussion of the fifth *Associated Indemnity* factor, *supra*, in its analysis of whether attorneys' fees are warranted. Four other factors refer to the reasonableness of counsel for Defendants' hourly rate, which was also discussed, *supra*: skill requisite to perform the legal service properly; customary fee charged in matters of the type involved; the experience and reputation of counsel; and the undesirability of the case. LRCiv 54.2(c)(3)(C), (E), (I), (J). Another factor calls for the Court to determine the reasonableness of the fee award by considering fee awards in similar cases. LRCiv 54.2(c)(3)(L). However, Plaintiff only refers to cases where the issue is reasonableness of counsels' hourly billing rate. (Doc. 106 at 14 (citing *Skydive Arizona,*

*Inc.*, 2011 WL 1004945)). Therefore, none of these factors justify adjusting the fee award because they were already considered in the lodestar calculations.

Other factors in the Local Rules that are not subsumed by the lodestar calculations likewise do not justify a downward adjustment of the fee award. First, parties have presented no evidence that this case has precluded counsel from seeking other employment. LRCiv 54.2(c)(3)(D). Further, there is no evidence that the nature of the fee contracted for between attorney and client, time limitations, the value of money or rights involved, or the nature of the attorney-client relationship mandate a downward adjustment. LRCiv 54.2(c)(3)(F), (G), (H), (K). Accordingly, the Court finds that there are no factors in the Local Rules justifying an adjustment of the fee award.

4.     Total Award

The Court finds that Defendants have established that they are entitled to recover the following reasonable amounts: $118,886.10 in attorneys' fees, $1,208.00 in paraprofessional fees, $1,200.00 in computerized legal research,[13] and $17,498.40 in attorneys' fees incurred in preparing the Motion for Attorneys' Fees. Accordingly, the Court awards Defendants attorneys' fees and costs totaling **$138,792.50**.

//
//
//
//
//
//
//
//
//
//

---

[13] Computerized research costs are recoverable under A.R.S. § 12-341.01. *Matter of Liquidation of Azstar Cas. Co. Inc.*, 938 P.2d 76, 77–78 (Ariz. Ct. App. 1996). Plaintiff does not dispute this. (*See* Doc. 106).

**IV.    CONCLUSION**

For the reasons set forth above,

**IT IS ORDERED** that Plaintiff's Motion for Leave to File Surreply to Motion for Attorneys' Fees (Doc. 116) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' request for further attorneys' fees incurred in responding to Plaintiff's Motion for Reconsideration and Plaintiff's Motion for Leave to File Surreply to Motion for Attorneys' Fees is **DENIED without prejudice**.

**IT IS FINALLY ORDERED** that Defendants' Motion for Attorneys' Fees (Doc. 92) is **GRANTED**. Defendants are awarded **$138,792.50** in attorneys' fees and costs. The Clerk of the Court shall enter judgment accordingly.

Dated this 13th day of May, 2019.

James A. Teilborg
Senior United States District Judge